**SO ORDERED.**

**SIGNED this 17th day of August, 2017.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANASAS

| IN RE: | |
|---|---|
| JAMES MARION FIELDS | Case No. 16-12315<br>Chapter 13 |
| Debtor. | |

## MEMORANDUM OPINION

Under § 506(a)(2), a manufactured home acquired for personal, family, or household use should be valued for confirmation purposes by determining what a retail merchant would sell a replacement for considering its age and condition at the date of valuation. James Fields purchased a 1996 Skyline Springbrook single-wide manufactured home from Ron and Pamela Lamar on a contract that provided for him to pay $20,000 over fifteen years and receive a certificate of title when complete. His chapter 13 plan would cram the Lamars' remaining $17,500 secured claim down to

1

$9,000. Based on the evidence presented at trial, a retail merchant would sell a replacement for this home for $10,500. Confirmation is therefore denied without prejudice to Fields amending his plan to appropriately treat the Lamars' claim consistent with this Court's determination of value.[1]

Facts

Mr. Fields purchased this single-wide home from the Lamars after it was already "set" in the Whitewater Mobile Home Park, a mobile home park they owned at that time in Augusta, Kansas, a town about 15 miles from downtown Wichita. The home, the lot, and the park are all well maintained. Fields has repaired subflooring, repaired or replaced the skirting, added a walk-in tub to the master bath, and replaced countertops and appliances in the kitchen. All the witnesses agreed that he has maintained the home in at least above-average condition, if not better.

Fields executed his contract with the Lamars in 2014.[2] Though the contract is titled "Real Estate Purchase Contract," the parties agree that only the manufactured home was being sold. The contract also incorrectly provides that a deed, rather than a certificate of title to the manufactured home, will be conveyed upon completion of the payments.[3] Ms. Lamar admitted that the subject home is misidentified in the

---

[1] The debtor James Fields appeared in person and by his attorney Michael J. Studtmann. The creditors Ron and Pamela Lamar appeared by their attorney Jeffrey Willis and Ms. Lamar appeared in person. Attorney Karin Amyx also appeared on behalf of the Chapter 13 trustee Carl B. Davis.
[2] Ex. 2.
[3] Under Kansas law, manufactured homes are generally considered to be personal property and titled in accordance with the Kansas Manufactured Housing Act, KAN. STAT. ANN. § 58-4201, *et seq.* (2005 and 2016 Supp.) *See* KAN. STAT. ANN. § 58-4204(a) (2016 Supp.). There was no evidence that the manufactured home's

2

contract as a 1997 Skylark rather than a 1996 Skyline Springbrook, but the VIN number appears to be correct. Under the agreement, the home's purchase price was $20,000, $2,000 down, and the other $18,000 being repaid in equal monthly payments of $207 over 180 months at 13% interest.[4] His contract also required him to pay $60 monthly for insurance and taxes and $155 monthly for lot rent. He was current up to the date he filed this chapter 13 case in November of 2016. The Lamars have since sold the park, but they retain legal title to the home. Shortly before they sold the park, Ms. Lamar raised the lot rent to $180. The Lamars filed a proof claim in this case for $17,500.

The Court received three different reports of value. None of the reports or witnesses provided the Court with photographs of the subject home. Fields offered the testimony and report of Chuck Fairleigh, a Wichita realtor with many years' experience in the sale and purchase of manufactured housing, both as a realtor and a sales person for dealers.[5] The Lamars responded with the testimony and report of Wendy Powers, an Accredited Community Manager of mobile home parks with over thirty years in the mobile home business as a community and office manager.[6] Fields' counsel apparently prepared a NADA online value report with his client's input and

---

certificate of title had been eliminating to convert the home from personal property to realty. *See* KAN. STAT. ANN. § 58-4214(a) (2005).

[4] This is not enough of a payment to fully amortize $18,000 over 15 years. The actual monthly payment should be approximately $235.

[5] Ex. 4. Mr. Fairleigh correctly identified the subject home as a 1996 Skyline Springbrook and the "s/n" from the data sheet inside the home matches the VIN number in the contract.

[6] Ex. B. Ms. Powers also correctly identified the subject home as a 1996 Skyline, Springbrook.

3

based on the contract description, but, unfortunately, that report refers to "all models" of a 1996 Skylark, a different manufacturer and model of home, so it is unhelpful.[7]

Mr. Fairleigh personally inspected Fields' home and did research on www.MHVillage.com, a website devoted to the buying and selling mobile and manufactured homes by dealers and private parties. He said that the website featured a number of Skyline homes of model years from 1996-1998 and of comparable size with asking prices in a range from $12,500 to $15,000. On direct examination, Fairleigh stated that he assumed that the home would be sold and moved because of the bankruptcy. On cross, he said he based his appraisal on the home remaining in place. His report stated, "The appraisal value is affected by the lack of quality used home loan programs and transportation costs associated with any sale of the home."[8] He also noted that "there is not one central information system for the local market in park resales or multi list real estate source."[9] Fairleigh testified that the majority of new and used homes sold at dealerships are conventionally financed by lenders, but he also cautioned that those lenders require higher down payments than many borrowers can afford. In-park sellers who are willing to carry back the purchase price require lower down payments. As a result, Fairleigh believes that a seller who is willing to self-finance a mobile home sale can set her price higher because she may be dealing with less creditworthy buyers who

---

[7] Ex. 3.
[8] Ex. 4
[9] *Id.*

4

are more concerned about whether their monthly payment is manageable than what the actual price of the house is. Finding Fields' home to be of "above-average condition," but 21 years old, Fairleigh concluded it was worth $10,500 "as is."[10] Fairleigh stated that he had not used NADA to supplement his value research because he believes that resource is more appropriate for setting the conventional loan value for a home. Instead, he relied on his internet research, his experience in the industry, and "telephone conversations with dealers, brokers and park operators knowledge of recent sales understanding that many actual details of transactions or financing terms are confidential, undisclosed or unavailable."[11] He did not provide any comparative sales or marketing information beyond his testimony and noted that "there may or may not be comparable homes available."[12]

Wendy Powers based her $21,500 value on her recent experience in selling a home on a lease-purchase agreement in a park with many positive amenities.[13] She opined that Fields' home is "top of the line," would show well in its current setting, and would bring even more money were it to be sold in a mobile home park in Wichita. She stated that she had sold a smaller 1993 Skyline home for $32,000 on July 1, 2017, a few weeks before trial, but that she was carrying back the purchase price on a

---

[10] *Id.* Mr. Fairleigh noted other amenities built by Fields after he entered into the purchase contract – a covered porch, fenced lot and carport – but did not include them in his value of the home.
[11] *Id.*
[12] *Id.*
[13] Ex. B. Ms. Powers' opinion of fair value "pursuant to a Lease Purchase Agreement" with a suggested sale price in the $18,000-$22,000 range, implies a seller-financed sale.

5

contract. She did not provide any descriptive details about the 1993 home that would allow the Court to compare it to the Fields' home. When I asked her what Fields' home would bring on a dealer's lot, she stated she believed a dealer would ask at least $30,000. She based this on her recent visits to three dealers' lots in Wichita. Ms. Powers testified that where a mobile home is set—the amenities of the park and its location—can affect its value. She noted that Mr. Fields' home has nice paint, nearly new windows, new kitchen and bath finish, and appears to be well-maintained. She also did not provide any comparable sales data concerning her $32,000 Skyline sale earlier this year.

Pamela Lamar testified that if she recovered this home in bankruptcy, she would offer it where it sits in the park for not less than $28,000. She asserted that the park is an excellent setting, located in a quiet area, and well-kept. But her allegation that this 21 year old mobile home is worth $8,000 more than she charged Fields for it in 2014 is simply not credible.

Analysis

Section 506(a)(2) requires the Court to determine the price that a "retail merchant" would charge for property that is the same age and in the same condition as the property being valued. In other words, what was this home's replacement value as of the date of the valuation hearing?[14] When the value of a secured creditor's collateral is at issue, the debtor has the burden to meet the presumption of validity

---

[14] *See In re Cook,* 415 B.R. 529, 533 (Bankr.D.Kan.2009) (applying § 506(a)(2) to motor vehicles) and *In re Kollmorgen*, No. 11-10904, 2012 WL 195200 at *3 (Bankr. D. Kan. Jan. 20, 2012) (applying the section to manufactured housing).

6

that attends the creditor's claim; once that presumption is met, however, the burden of proof shifts to the creditor.[15] Mr. Fields' and Fairleigh's testimony sufficed to shift the burden to the Lamars.

The Court regrets that neither value witness looked to the NADA manufactured housing appraisal guide. That guide can be "the starting point for retail merchant value with age, condition, and component adjustments to reach the replacement value of a manufactured home under § 506(a)(2)."[16] The guide considers values that "represent a sited (delivered and set up) structure in current year depreciated replacement dollars."[17] The home should be valued as delivered and set up, but without considering the characteristics of its location.

Mr. Fairleigh did refer to a readily-accessible third-party resource for current manufactured home prices, www.MHVillage.com, but that website only contains advertisements for manufactured homes offered for sale.[18] Ms. Powers' comments helped the Court understand the contours of the mobile home market, but her report and testimony was based on one lease-purchase sale by herself. She emphasized the

---

[15] *See In re Coleman*, 373 B.R. 907, 911-12 (Bankr. W.D. Mo. 2007) (when valuation arises in context of creditor's objection to confirmation it implicates claim allowance and the burden of proof governing claims), *aff'd* 392 B.R. 767 (8th Cir. BAP 2008). *See also* Fed. R. Bankr. P. 3001(f).
[16] *In re Moffett-Roberts*, No. 13-12442, 2014 WL 1674331 at *3 (Bankr. D. Kan. Apr. 28, 2014). *See* www.nadaguides.com/Manufactured-Homes
[17] From NADA value guidelines as quoted in *In re Kollmorgen*, *supra* at *4. (The NADA values are considered to be fair market retail values in the absence of local, reliable, similar comparable sales data.).
[18] He stated that when he looked at that site, several Skyline homes of similar vintage were being offered for $12,500 or less. An asking price is not, of course, particularly persuasive evidence of value.

7

quality of the mobile home park in setting the value of the home in place by determining what an in park seller might be able to get for it. While both appraisal reports would have benefitted greatly from more comparable sales data, Mr. Fairleigh's report and testimony valued the home as a retailer might price it. Ms. Powers' report and testimony took the home's location into account. Fairleigh's report more reliably fairly represents "what a retail merchant would charge" and is therefore more reliable for § 506(a)(2) purposes.

Mr. Fields' mobile home should be valued at $10,500. As that is more than the Trustee reports he can pay under the current version of his plan, Mr. Fields has failed to bear his burden of proof on confirmation because he cannot show that his plan is feasible. Confirmation is therefore denied without prejudice. Mr. Fields shall have 21 days from the date this order is entered to amend his plan, convert his case to chapter 7, or see his case dismissed.

###

8

Case 16-12315    Doc# 45    Filed 08/17/17    Page 8 of 8